# EX PARTE AMERICAN STEEL BARREL CO. AND SEAMAN.

### PETITION FOR WRIT OF MANDAMUS AND RULE.

No. 14, Original. Argued April 21, 1913.—Decided June 16, 1913.

The proceeding to retire for personal bias or prejudice a trial judge of a United States court from further hearing a case of which he has jurisdiction had its origin in the new Judicial Code, § 21, and is only applicable in rare instances in which not merely adverse, but biased and prejudiced, rulings are shown and facts and reasons given.

Section 21 of the Judicial Code is not intended as a means for a discontented litigant ousting a judge because of adverse rulings, or as a method of paralyzing the action of a judge who has heard the case by disqualifying him between the hearing and the determination of the matter heard.

*Quære* and not decided whether under §.21, Judicial Code, any affidavit of bias and prejudice is sufficient or whether the judge can pass upon its sufficiency.

The authority of a judge, whose attempted designation under §§ 14 and 21 of the New Judicial Code is beyond the judicial power of the senior circuit judge, may ·be excepted to; and any order or decree made by him while acting under such designation may be reviewed in due‛course of law. ‛

The writ of mandamus will be granted by this court only when it is clear and indisputable that there is no other legal remedy.

Where a senior circuit judge in designating under § 14 of the Judicial Code a judge to act in place of one retired under § 21 of the Judicial Code acts. in the exercise of his legitimate jurisdiction, this court cannot correct a mistake, if he makes one, by the writ of mandamus.

THE facts, which involve the construction of § 21 of the Judicial Code of 1911 and· the jurisdiction of this ·court to issue writs of mandamus, are stated in the opinion.

*Mr. John C. Spooner*, with whom *Mr. Aldis B. Browne, Mr. Louis O. Van Doren* and *Mr. G. Murray Hulbert* were ·on the brief, for petitioner.

*Mr. John A. Garver*, with whom *Mr. Edwin T. Rice* and *Mr. Charles A.· Riegelman* were on the brief, for respondents.

MR. JUSTICE· LURTON delivered the opinion of the court.

This is a proceeding for a rule on the Hon. Thos.·I. Chatfield, District Judge of the United States for the Eastern District of ·New York, the Hon. Julius Mayer, District Judge for .the Southern‛ District of New York, and the Hon. E: Henry Lacombe, Senior Circuit Judge for the ‛Second Judicial Circuit of the United States, to show cause why a writ of mandamus shall not be issued commanding the Hon. Thos. I. Chatfield to resume jurisdiction and

proceed to hear and determine all matters which may arise or have arisen in a certain proceeding pending in the said District Court for the Eastern District of New York wherein the Iron Clad Manufacturing Company has been adjudicated a bankrupt; and directing the vacation of an order made in said case by the Hon. E. Henry Lacombe, as Senior Circuit Judge, on April 2, 1912, designating and appointing the said Judge Mayer, District Judge to hear and exercise in the Eastern District of New York, the same powers that are now vested in the District Judges of said District, or either of them, *"and quashing and setting aside all proceedings in said matter of Iron Clad Manufacturing Co., Bankrupt,* had before said Hon. Julius M. Mayer . . . subsequent to the said order of Judge Lacombe . . . , and especially commanding the said Judge Chatfield to exercise the jurisdiction thereof which he had and was exercising on and prior to the 29th of March, 1912."

A rule to show cause issued, and a return has been made.

The question now is whether a writ of mandamus shall issue.

Shortly stated, the facts necessary to be understood are these:

1. Creditors of the Iron Clad Manufacturing Company, filed on May 23, 1911, a petition in the District Court of the United States for the Eastern District of New York, praying its adjudication as a bankrupt. The proceeding was long contested, but on December 2, 1911, the company was adjudged a bankrupt by Judge Chatfield.

2. In the meantime, controversies had arisen as to what constituted the assets of that company. On June 20, 1911, certain of the creditors filed a petition in the case, charging that the corporate capital, property and assets of another corporation, the American Steel Barrel Company, belonged to the Iron Clad Manufacturing Co., and had been controlled and managed in the interest of the

latter, and praying that the receivership under the proceeding against the Iron Clad Manufacturing Company should be extended to the American Steel Barrel Company.

3. This was bitterly resisted and the independent ownership of the Steel Barrel Company asserted. Elizabeth C. Seaman was the president and manager of both companies, and the nominal owner of all of the shares in each, save a few qualifying shares in the hands of directors. Mrs. Seaman seems to have been not only active in resisting the proceedings against the Iron Clad Company, but also in resisting every claim to the property of the Steel Barrel Company made by the creditors of the Iron Clad Company.

4. The hearing of this application was postponed from time to time and there was disagreement as to whether it should be heard upon affidavits before Judge Chatfield or referred to a commissioner to take proof and report. Finally, on March 15, 1912, Judge Chatfield filed an opinion refusing to extend the receivership to the property of the American Steel Barrel Company, or to take summary possession of its assets, as he had been asked to do. The ground upon which he acted, as shown by his opinion (194 Fed. Rep. 906), was, that the claim to the assets of the Steel Barrel Company was one which should be asserted in a plenary suit. An order in accordance with this opinion was not entered because counsel for the creditors asked for time to make a new application, and such application was made on March 29, 1912, followed, however, on the same day, by the filing of an affidavit under § 21 of the Judicial Code, to prevent further hearing of the case by Judge Chatfield. That affidavit, in substance, alleged that throughout the proceedings in the case, Judge Chatfield had manifested "a strong bias and prejudice against the petitioning creditors and against their counsel, and has shown a strong bias toward Mrs. Elizabeth C. Seaman,

who was and is the sole person interested in the subject-matter of the bankrupt corporation's property other than the creditors."

The motion to rehear the application to extend the receivership was made when District Judge Veeder was holding the bankrupt court and was by him at once referred to Judge Chatfield. In view of the filing of the disqualifying affidavit, Judge Chatfield declined to hear the motion and application to re-open and rehear the motion which had been decided by the opinion handed down on March 15th, and made a certificate in these words:

"UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK.

| | |
|---|---|
| IN THE MATTER<br><br>OF<br><br>IRON CLAD MANFACTURING<br>COMPANY,<br>BANKRUPT. | March 29, 1912. |

IN THE MATTER OF A MOTION TO REOPEN THE APPLICATION TO EXTEND RECEIVERSHIP, FOR A DIRECTION THAT THE PETITIONERS BE AFFORDED AN OPPORTUNITY TO TAKE TESTIMONY, ETC., AND FOR POSTPONEMENT OF THE ENTRY OF ANY ORDER OR DECREE UPON THE APPLICATION DECIDED MARCH 15, 1912, AND FOR OTHER RELIEF.

Before VEEDER, J.

Appearances: Whitridge, Butler & Rice, for petitioning creditors, in support of motion, James A. Allen, specially for Elizabeth C. Seaman and the American Steel Barrel

Co., Emanuel Hertz, specially for George A. Wheelock, in opposition.

Motion respectfully referred to Judge Chatfield.

VAN VECHTEN VEEDER,
*U. S. J.*

The within application having been referred upon the return day to me Judge Veeder, who called the motion calendar, and the motion papers having been presented by the Clerk, in the presence of James A. Allen, appearing specially, and desiring to be heard in opposition, as attorney for certain parties, Emanuel Hertz, appearing specially for George A. Wheelock, and also desiring to be heard in opposition, and Erskine B. Essig, representing certain creditors, but not taking part in said motion, and no one appearing before me on behalf of the petitioners, but a certain affidavit by Thatcher M. Brown having been brought to the attention of the Court, which affidavit was filed after the motion was referred to me by Judge Veeder and before any of the parties appeared before me, in which the said Thatcher M. Brown, as a party to the proceeding, makes an affidavit that I have a personal bias either against the creditors or in favor of the opposite party to the proceeding, and asking that another judge be designated in the matter prescribed in Section 20, to hear this motion,

I do hereby, in accordance with the provisions of Section 21 of the law known as the Judicial Code, and now in effect, proceed no further in this motion, and order that an authenticated copy of this statement be forthwith certified to the Hon. E. Henry Lacombe, Senior Circuit Judge now present in this Circuit, in order that proceedings may be had under Section 14 of said Act, it being apparent that this motion cannot proceed under section 23, which is prescribed as an alternative method in said Section 21 of said law.

The Court further certifies that it does not make an en-

try upon the records of the Court (nor does it admit) that it has any personal bias or prejudice, but on the contrary might call in question many of the statements or controvert many of the allegations contained in said papers. And this Court feels that if any disqualification exists it was also present when this Court directed a verdict of adjudication and made other decisions in favor of said creditors, and when the Judge now holding the Court upheld the findings of the Special Commissioner as to charges of contempt against Mrs. Seaman.

The Court however feels that the intent of Section 21 is to cause a transfer of the case, without reference to the merits of the charge of bias, and therefore does so immediately, in order that the application of the creditors may be considered as speedily as possible by such Judge as may be designated.

THOMAS I. CHATFIELD,<br>
<em>U. S. D. J.</em>"

Thereupon, Circuit Judge Lacombe made the order which it is now sought to have set aside, in these words:

## "UNITED STATES DISTRICT COURT,

IN THE MATTER

OF

IRON CLAD MANUFACTURING COMPANY,
BANKRUPT.

Upon the affidavit of Thatcher M. Brown, the certificate of Charles A. Riegelman, Edwin T. Rice and John

M. Garver, Counsel for petitioning creditors and certificate of the Senior District Judge of this District, all filed in this Court on March 29, 1912, and which have been examined by me;

I, E. Henry Lacombe, Senior Circuit Judge of the Second Circuit, under the authority conferred by Section Twenty-one of the Judicial Code of the United States, do hereby designate and appoint the Honorable Julius M. Mayer, District Judge of the Southern District of New York, to have and exercise, in the above entitled proceeding within the Eastern District of New York, the same powers that are now vested in the District Judges of said Eastern District or either of them.

April 2, 1912.

E. HENRY LACOMBE,
Senior Circuit Judge,
Second Circuit.

Counsel for the respective parties may communicate with Judge Mayer, who will inform them at what time or times it may be convenient for him to hold Court in the Eastern District.

E. HENRY LACOMBE,
Senior Circuit Judge."

Thereupon Judge Mayer assumed jurisdiction and has since made many interlocutory orders and rulings in the case, to all of which the opposite parties in the proceeding objected and excepted upon the ground that his designation was null and void. Nevertheless, Judge Mayer continued to exercise jurisdiction from the time of his designation in April, 1912, down to the filing of this petition in February, 1913.

The fundamental proposition maintained by the petitioners is that all of the proceedings before Judge Mayer are null and void for lack of jurisdiction and that Judge Chatfield still retains jurisdiction, and that all of the interlocutory orders made by Judge Mayer should be vacated

and Judge Chatfield commanded to proceed with the hearing of the matters pending before him when he refused to proceed further with the case upon the filing of the affidavit objecting to his further exercise of jurisdiction.

The proceeding to retire a trial judge of a United States court from further hearing a case of which he has jurisdiction, had its origin in the new Judicial Code, effective January 1, 1912, and constitutes § 21 of that Code. It is as follows:

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in the section last preceding, or chosen in the manner prescribed in section twenty-three, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action."

The basis of the disqualification is that "personal bias or prejudice" exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. It is a provision obviously not applicable save in those rare instances in which the affiant is able to state facts

which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice. It was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, for such rulings are reviewable otherwise, but to prevent his future action in the pending cause. Neither was it intended to paralyze the action of a judge who has heard the case, or a question in it, by the interposition of a motion to disqualify him between a hearing and a determination of the matter heard. This is the plain meaning of the requirement that the affidavit shall be filed not less than ten days before the beginning of the term.

The case of *In re Iron Clad Manufacturing Company* had been pending since May, 1911. This affidavit was not filed until March 29, 1912, less than ten days before the April term of the court. In the meantime that company had been adjudged a bankrupt against much opposition, and as the result of a jury trial, and Judge Chatfield had made many interlocutory orders in reference to the bankrupt estate. The principal matter which was then pending before him was the petition of certain creditors of the Iron Clad Manufacturing Company, to have the receivership for the property of that company extended so as to include the corporate property of the Steel Barrel Company. This was very earnestly contested. On March 15, 1912, Judge Chatfield handed down the opinion reported in 194 Fed. Rep. 906, denying the application upon the ground that the matter was one which should be asserted by a plenary suit. The order denying that application did not go down, because of the interposition of the motion for a rehearing or to file a new application, on March 29, 1912, while Judge Veeder, another of the judges of the Eastern District, was presiding, which was immediately referred by Judge Veeder to Judge Chatfield. Thereupon and before the latter could act upon it, and on the same

day, the disqualifying affidavit was filed. The action of Judge Chatfield is fully shown by the order and certificate set out heretofore.

We shall not pass upon the timeliness of the affidavit, nor upon the legal sufficiency of the facts therein stated, as affording ground for the averment that "personal bias or prejudice" existed. If Judge Chatfield had ruled that the affidavit had not been filed in time, or that it did not otherwise conform to the requirement of the statute,. and had proceeded with the case, his action might have been excepted to and assigned as-error when the case finally came under the reviewing power of an appellate tribunal. *Henry* v. *Speer*, 201 Fed. Rep. 869; *Ex parte Fairbank Co.*, 194 Fed. Rep. 978; *Ex parte Glasgow*, 195 Fed. Rep. 780, affirmed by this court in *Glasgow* v. *Moyer*, 225 U. S. 420. But this is not what happened. Judge Chatfield held that the affidavit was sufficient in law to make it his duty to proceed no further. Acting upon that determination he certified his withdrawal and the affidavit to the Senior Circuit Judge that he might, in the exercise of his jurisdiction under § 14 of the new Judicial Code, designate another Judge to proceed with the hearing of the case. It is obvious that if the designation of Judge Mayer under these conditions was wholly beyond the judicial power of the Senior Circuit Judge, his authority to make any order or decree acting thereunder might have been excepted to and thus made the subject of review in due course of law.

The writ of mandamus will be granted by this court only when it is clear and indisputable that there is no other legal remedy. *Ex parte Newman*, 14 Wall. 152, 165; *Bayard* v. *United States*, 127 U. S. 246; *In re Morrison*, 147 U. S. 14.

Judge Lacombe was clearly called upon to determine in the exercise of his jurisdiction as the Senior Circuit Judge, whether the situation was one in which he should designate a Judge in the room and place of Judge Chatfield. He determined the matter adversely to the petitioners. If

in this he made a mistake, it was one made in the course of the exercise of his legitimate jurisdiction under § 14 of the new Judicial Code, and we cannot compel him through a writ of mandamus to undo what has thus been done. *Ex parte Burtis*, 103 U. S. 238; *In re Parsons*, 150 U. S. 150.

Aside from what has been said the long delay in asking the extraordinary remedy of mandamus would fully justify this court in the exercise of a sound discretion in denying relief.

*The rule must be discharged.*