Mohamet Sheriff NJIE, Plaintiff,

v.

LUBBOCK COUNTY, TEXAS; Sgt. Cindy Stinson; Deputy Gaylan Martin; Deputy Gilbert Cuevas; and Deputy Anthony McAdoo, Defendants.

No. CIV.A.5:97–CV–074–C.

United States District Court,
N.D. Texas,
Lubbock Division.

March 2, 1998.

Charles Steven Dunn, Dunn & Walker, Lubbock, TX, for Plaintiff.

Frank E. Murchison, Jim E. Hund, McCleskey, Harriger, Brazill & Graf, Lubbock, TX, George Lyman Thompson III, Thompson & Thomas, Lubbock, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

On this day the Court considered a Motion for Mistrial, which was filed by the plaintiff on February 19, 1998. The basis for the motion is that the Court[1] cannot be an impartial arbiter of this case pursuant to 28 U.S.C. §§ 144 and 455. After having reviewed the arguments of counsel, the Court is of the opinion that it is impartial and can remain so throughout this trial. Accordingly, plaintiff's motion is **DENIED.**

### I.

### Background

This lawsuit involves a pretrial detainee's accusation that several jail deputies of the Lubbock County Jail inflicted excessive and unnecessary force upon the plaintiff and then were deliberately indifferent to his serious medical needs in violation of 42 U.S.C. § 1983. The plaintiff is seeking to hold Lubbock County liable as well because he asserts that Lubbock County had a custom, policy, or practice which allowed the jail deputies to violate the law.

After trial began on February 17, 1998, the Court became aware that one of the deputies employed by Lubbock County, and who may have knowledge of facts relevant to this case, is Deputy Scott Yeates,[2] a cousin to Judge

---

1. Throughout this order the word "Court" will be used in reference to the district judge unless the context of the word indicates otherwise.

2. Deputy Yeates is not a defendant in this lawsuit, was not designated as a witness pursuant to Federal Rule of Civil Procedure 26, nor was his name read during *voir dire* as a potential witness.

Cummings.[3] Upon learning that Deputy Yeates may have knowledge of facts relevant to this case, the Court called the attorneys into chambers and informed counsel of the relationship, the fact that the Court was not well acquainted with Deputy Yeates, and that the Court believed that the fact that Deputy Yeates may have knowledge of relevant facts or that he may be pictured in one of the jail videos would not influence the Court in any way. The Court then asked counsel whether they had any problem with the Court continuing with the case. All parties agreed that there would be no conflict and consented to having the Court continue with the case.[4]

The Court proceeded with the case and made several evidentiary rulings, some favorable and unfavorable to both sides. In particular, the Court ruled against the admissibility of fifty-one intake videos at the Lubbock County Jail because many of the videos involved acts subsequent to the date of plaintiff's injuries, and because the Court found that the plaintiff was complaining about alleged conduct occurring in the violent holding cell rather than at the intake area.[5] Later, the Court revisited its earlier ruling about the admissibility of the intake videos after plaintiff's counsel represented to the Court that some of the videos were made before the date of plaintiff's injury and showed pretrial detainees being taken from the intake area to the violent holding cell in a manner which violated Lubbock County policy and which might be described as violent. Upon this representation, the Court instructed the parties that it would allow the plaintiff to offer into evidence five additional videos of the plaintiff's choosing which were made prior to the date of plaintiff's injury in order to show a custom, practice, or policy of Lubbock County. During this conference plaintiff's counsel inquired about the admissibility of a jail video which was made subsequent to plaintiff's injuries and which the plaintiff anticipated introducing for impeachment purposes. After questioning counsel about the

content of the video, the date it was made, and how it would be proffered, the Court made a ruling against its admissibility. Plaintiff's counsel then informed the Court that in light of its rulings on the admissibility of certain evidence, the plaintiff was moving for a mistrial due to the fact that the Court could not be impartial because of its relationship to Deputy Yeates.

## II.

### Recusal Statutes

While some states give each party one free chance to disqualify the judge, the parties have no right to a judge of their choice in federal court. *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1262 (5th Cir.1983). If a party, however, believes that the judge assigned to hear his case cannot be impartial, that party may move to disqualify or recuse the judge pursuant to 28 U.S.C. § 144 or § 455. If the motion is made pursuant to § 455, the judge whose impartiality is being questioned rules on the motion. *See In re Bernard,* 31 F.3d 842 (9th Cir.1994). On the other hand, if the motion is made pursuant to § 144, the same judge must first determine whether the required affidavit complies with the law and, if so, he must turn the matter over to one of his brethren; the judge whose impartiality is being questioned cannot rule on a § 144 motion, only the sufficiency of the affidavit. *United States v. Miranne,* 688 F.2d 980, 984–85 (5th Cir. 1982).

Although federal law provides recourse for a litigant who believes that a federal judge is not impartial, that litigant carries the burden of proof, which is substantial, because a judge is presumed to be impartial. *Bin–Wahad v. Coughlin,* 853 F.Supp. 680, 683 (S.D.N.Y.1994). Judicial disqualification is solely an issue of law. *In re City of Houston,* 745 F.2d 925, 927 (5th

---

3. Specifically, Deputy Yeates is Judge Cummings' aunt's grandson—a relative within the fifth degree.

4. This colloquy took place off the record. Therefore, 28 U.S.C. § 455(e) does not apply to the motion before the Court.

5. The Court did allow the presentation of one intake video for impeachment purposes.

Cir.1984). And when the recusal motion is based upon § 455, a failure to disqualify is reviewed by looking to whether it was an "abuse of sound judicial discretion." *Id.* (quoting H. Rep. No. 1453, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355)(internal quotations omitted); *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of the State of Miss.*, 637 F.2d 1014, 1021 (5th Cir. Unit A Feb.1981); *United States v. Mizell*, 88 F.3d 288, 300 (5th Cir.1996); *Diversified Numismatics, Inc. v. City of Orlando, Fla.*, 949 F.2d 382, 384–85 (11th Cir.1991)(per curiam).

### A.

### 28 U.S.C. § 144

Section 144 of Title 28 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

*See* 28 U.S.C. § 144.

■ In order for the plaintiff to properly move for recusal pursuant to § 144, he must file an affidavit and certificate indicating that the motion is made in good faith. *Id.* The failure to file either justifies the denial of the motion. *See United States v. Branch*, 850 F.2d 1080, 1083 (5th Cir.1988); *Morrison v. United States*, 432 F.2d 1227, 1229 (5th Cir. 1970)(per curiam); *see also Yates v. Manale*, 377 F.2d 888, 889 (5th Cir.1967)(per curiam)(stating that a failure to timely file an affidavit waives a § 144 motion). The plaintiff's motion failed to include an affidavit and

failed to include a certificate stating that the motion was being made in good faith. The Court therefore **DENIES** the plaintiff's § 144 motion because it is procedurally defective.

### B.

### 28 U.S.C. § 455

Section 455 of Title 28 states in relevant part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . .

(5) He or his spouse, or a person *within the third degree of relationship* to either of them, or the spouse of such a person:

. . .

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

. . .

(d) For the purposes of this section the following words or phrases shall have the meaning indicated:

. . .

(2) the degree of relationship is calculated according to the civil law system;

. . .

(e) No justice, judge, or magistrate shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.

*See* 28 U.S.C. § 455 (emphasis added).

*Section 455(a)*

■ Although the plaintiff's motion addresses only § 455(b)(1) and does not ad-

dress § 455(a), this Court pauses to address the latter section because a judge has an affirmative duty to identify the existence of grounds for recusal without first waiting for a filed motion. *United States v. Garrudo*, 869 F.Supp. 1574, 1577 (S.D.Fla.1994); *State of Idaho v. Freeman*, 507 F.Supp. 706, 720 (D.Idaho 1981)(commenting on the 1974 version of § 455). As this Court has informed counsel earlier, the fact that a distant relative may appear on a video which the plaintiff may attempt to enter into evidence will have no bearing upon this Court's impartiality or *perceived* partiality throughout this trial. Deputy Yeates is a person outside of the "third degree of relationship." *See infra; see also Liteky v. United States*, 510 U.S. 540, 553, 114 S.Ct. 1147, 1156, 127 L.Ed.2d 474 (1994)(stating that the third degree of relationship analysis applicable to § 455(b) applies to § 455(a) as well).

■ That Deputy Yeates is outside the third degree of relationship, according to the civil law system, is clear. According to the civil law system:

> [P]arents and children of a deceased are related to him in the first degree. The second degree comprises the grandparents, grandchildren, brothers, and sisters of the deceased. Uncles, aunts, nephews, nieces, and great-grandparents of the deceased are related to him in the third degree. The fourth degree of relationship includes first cousins, great-uncles and great aunts, and great-great-grandparents. The children of a [first] cousin (first cousin once removed), the great-great-uncles and great-great-aunts, and the children of a great-uncle or great aunt are related in the fifth degree. The relationship of second cousins, as the designation is used, is in the sixth degree.

*See* 23 AM. JUR. 2D *Descent and Distribution* § 55 (1983)(footnotes omitted)(alteration added).[6]

Even if the relationship between this Court and Deputy Yeates were within the fourth degree rather than the fifth degree, as the Court believes it is, "[i]t would obviously be wrong ... to hold that 'impartiality could reasonably be questioned' simply because one of the parties is in the fourth degree of relationship to the judge." *Liteky*, 510 U.S. at 553, 114 S.Ct. at 1156. Therefore, the Court finds that it has been impartial, can remain so throughout this trial, and that objectively viewed, no reasonable person can question its impartiality based upon the degree of relationship it has with Deputy Yeates.

*Section 455(b)*

■ As this Court has stated above, its relationship with Deputy Yeates falls outside of the third degree of relationship. Because it would "obviously be wrong" to conclude that this Court's impartiality could reasonably be questioned in light of the degree of relationship and this Court's finding that it is impartial, the plaintiff's complaint can only be with this Court's rulings, which are intrajudicial. *Liteky*, 510 U.S. at 556 & n. 3, 114 S.Ct. at 1158 & n. 3. The record reflects that the real reason for the plaintiff's motion is this Court's rulings, not its relationship to Deputy Yeates. In chambers, after having made a ruling limiting the admissibility of the plaintiff's evidence, the plaintiff stated: *"Based upon this ruling,* I have to make a motion for a mistrial ...."[7] Indeed, the written motion is in accord. *See* Pl.'s Mot. for Mistrial at 3.

■ The Supreme Court has stated that "the recusal statute 'was never intended to enable a discontented litigant to oust a judge because of adverse rulings made, ... but to prevent his future action in the pending cause.'" *Liteky*, 510 U.S. at 549, 114 S.Ct. at 1154 (quoting *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 44, 33 S.Ct. 1007, 1010 57 L.Ed. 1379 (1913)). What *is* required in order to show that a judge should be recused is bias or prejudice stemming from an extra-

---

**6.** Although the Court and Deputy Yeates might be described in colloquial language as being "second cousins," the relationship is more properly described as being "first cousins once removed." *See* 23 AM. JUR. 2D *Descent and Distri-* *bution* § 55 at n. 97 (1983)(explaining the differences between second cousins and first cousins once removed).

**7.** This discourse occurred on the record.

judicial source, not intrajudicial rulings. On this subject the Supreme Court stated:

It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.,* at 28 (internal quotation marks omitted). *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*See Liteky,* 510 U.S. at 555–56, 114 S.Ct. at 1157 (some citations omitted)(emphasis in original).

Upon reviewing the plaintiff's written motion, and in light of the oral statements made in chambers, the Court is of the opinion that the plaintiff is being disingenuous when he states that the relationship between the Court and Deputy Yeates is the reason for the motion. The plaintiff's own words indicate that this Court's rulings are the basis for the motion. The plaintiff was given the opportunity to object to this Court presiding over this case early in the trial when rulings had yet to be made which, in the plaintiff's subjective opinion, seriously hampered his ability to present a winning case. To allow the plaintiff to "lie behind the log" until such time as he believes things begin to look less rosy than they did the first day of trial and to then spring forth and challenge this Court's impartiality *based upon its rulings* is in direct contradiction to the reasons why recusal statutes were enacted.

The plaintiff's motion pursuant to § 455 is **DENIED.**

**SO ORDERED.**